225 So.2d 736 (1969)
Jessie O. SANDEL, Jr., Plaintiff-Appellant,
v.
The TRAVELERS INSURANCE COMPANY, Defendant-Appellee.
No. 2748.
Court of Appeal of Louisiana, Third Circuit.
August 7, 1969.
*737 James L. Davis, Many, for plaintiff-appellant.
Hall & Coltharp, by H. O. Lestage, III, DeRidder, for defendant-appellee.
Before SAVOY, HOOD and MILLER, JJ.
HOOD, Judge.
Jessie O. Sandel, Jr., instituted this suit for damages sustained by him as the result of a collision between his own automobile and a truck owned by Midwest Farms. The suit was instituted against the Travelers Insurance Company, liability insurer of the owner of the truck. The trial judge concluded that the driver of the truck was not negligent, and judgment was rendered in favor of defendant. Plaintiff has appealed.
This suit was consolidated for trial and appeal with another suit which was instituted by Mr. and Mrs. Raymond C. Alford against The Travelers Insurance Company and Herman Procell, which action arose out of the same accident. We are rendering judgment at this time in both of these companion suits. See Raymond C. Alford, et ux, v. Travelers Indemnity Company and Herman Procell, La.App., 225 So.2d 740.
The collision occurred about noon on February 21, 1968, at the intersection of U. S. Highway 171 and the bypass route of that highway, in the Town of Many. This intersection is irregular in shape, with five streets entering it, and it is apparent from the nature of the crossing that motorists who traverse it should exercise a greater degree of care than would be required at ordinary intersections. Highway 171 runs generally north and south, but it makes a curve at or immediately north of that crossing. The bypass road which crosses Highway 171 runs generally east and west, but it also makes a turn or a curve at that point.
Highway 171 is the preferred thoroughfare, and vehicles on that highway have the right of way over those traveling on the bypass road at the above mentioned crossing. A stop sign is located on the west side of Highway 171, warning motorists traveling east on the bypass road to stop before entering the intersection. A building located adjacent to and northwest of this crossing obstructs the view of approaching *738 motorists, to the extent that a motorist traveling east on the bypass road and one traveling south on Highway 171 are not able to see each other until the vehicle on the bypass route reaches a point within a very few feet of the main traveled portion of Highway 171.
Immediately prior to the time the collision occurred, plaintiff's automobile was being driven south on Highway 171 by his daughter, Diana Sandel (now Mrs. Diana Sandel Breckinridge). A guest passenger, Mrs. Raymond C. Alford, was in the car with her. As Mrs. Breckinridge approached the intersection at a speed of from 25 to 32 miles per hour she saw the Midwest Farms truck also approach the same intersection while traveling east on the bypass road. She concluded that the truck driver did not intend to stop at the crossing, so she applied her brakes and caused her automobile to skid several feet. The vehicles collided at or near the intersection, the right front part of the Sandel car striking the left front part of the Midwest Farms truck.
The weather was misty at the time the accident occurred, and the streets at that crossing were wet. Both of the intersecting streets were blacktopped.
The principal issue presented is factual, and that is whether the collision occurred in the southbound lane of traffic of Highway 171. Plaintiff contends that the Midwest truck entered the intersection in violation of his daughter's right of way, and that the collision occurred in the southbound lane of traffic of Highway 171. Defendant contends that the driver of the Midwest truck brought that vehicle to a complete stop three or four feet before it reached the intersection, that the Sandel automobile skidded to its right, off the main traveled portion of Highway 171 and on to the bypass road, and that the collision occurred several feet west of the western edge of the highway.
The record contains the testimony of ten witnesses who saw the accident occur or who observed the vehicles shortly after they collided. Five of these witnesses indicate that the collision occurred in the southbound lane of traffic of Highway 171, and the remaining five indicate that it occurred from two to four feet west of the traveled portion of that highway.
The trial judge, in an excellent written opinion, thoroughly discussed and analyzed the testimony of each witness. Ultimately, in determining where the collision occurred, he relied largely on the testimony of the Deputy City Marshall who investigated the accident and the testimony of the driver of the wrecker which was used to remove the vehicles shortly after they collided. The trial judge found that Procell had stopped his truck before he reached Highway 171, that Mrs. Breckinridge had skidded off the west edge of that highway, and that the collision actually occurred a few feet west of the traveled portion of Highway 171. He concluded that the driver of the truck was free from negligence, and that the sole proximate cause of the accident was the negligence of Mrs. Breckinridge in failing to maintain proper control of the automobile which she was driving as she approached this crossing.
Mr. James L. Davis, the attorney who represents the plaintiff in the instant suit, testified as a witness at the trial. He was subpoenaed by counsel for the plaintiffs in the companion suit, and thus he testified under compulsion. The pertinent part of his testimony is to the effect that he saw the wrecked vehicles a few moments after the accident occurred, that these vehicles were so close together at that time that they were touching, and that the front of the Midwest truck was in the southbound lane of traffic of Highway 171, about three feet inside the west edge of the hard surfaced slab of that highway. He stated that he made this observation as he was driving around the wrecked vehicles after the accident and when he stopped for a few seconds while going around them. He remained in his *739 car during all of that time, however, and he concedes that he observed the vehicles for only a very brief period of time. The testimony of this witness is supported by that of some of the witnesses, and it is contradicted by others.
The trial judge observed in his written reasons for judgment that an attorney who is called as a witness in a case in which he is interested as an advocate is in a peculiar and sometimes inconsistent position, because "the function of an advocate is to advance or argue the cause of another, while that of a witness is to state facts objectively." The judge then concluded that the court was "constrained to look largely at the testimony of the witnesses other than Mr. Davis in reaching its conclusions herein."
Plaintiff interprets this last quoted statement as being a ruling by the trial court that the attorney for plaintiff had no right to testify at the trial, and that his testimony would not be considered for that reason. We place no such interpretation on the ruling of the trial judge. A review of his reasons for judgment convinces us that the judge considered the testimony of this witness, but that he simply attached less weight to it because of the circumstances which existed at the time it was given. We think he merely weighed the credibility of this witness, and after considering his interest and professional obligations the trial judge concluded that less weight or value should be attached to his statements than otherwise might be done.
We have considered all of the evidence, and have concluded that it supports the conclusions reached by the trial judge. One of the factors which has influenced us in reaching this conclusion is that both of the drivers involved in this accident stated that the vehicles were not moved from the time the collision occurred until the investigating officer arrived, and the testimony of the investigating officer is firm to the effect that the front of the truck was two and one-half feet west of, or off, the main traveled portion of Highway 171 when he arrived. The driver of the wrecker which was used in moving the vehicle also testified that the truck was three feet off the highway when he arrived shortly thereafter. These last mentioned witnesses had no interest in the outcome of the case, and we think they were in a better position than any one else who testified to determine the exact location of the vehicles after the accident occurred.
Another factor which we have considered is that the intersection was irregular and some of the witnesses indicated that it was difficult for them to determine the exact location of the western boundary of that crossing. The uncertainty as to the location of the western edge of Highway 171 may account for some of the conflicts in the testimony as to whether the cars collided in or out of the intersection. But, since the west edge of the crossing was difficult to locate with exactness, we are inclined, like the trial judge, to rely on the testimony of those who made a close inspection of the scene of the accident, rather than on that of those who merely observed it more casually as they were passing the wrecked cars.
Applicable here are the well settled principles of law that the burden of proof rests upon the plaintiff to establish by a preponderance of the evidence the facts upon which his claim is based. And, the findings of fact made by the trial judge, particularly those involving the credibility of witnesses, are entitled to great weight on appeal, and his conclusions as to the facts will not be disturbed unless found to be clearly erroneous.
We are unable to say that the trial court erred in finding that the Midwest truck did not enter the intersection before the collision occurred, that plaintiff's automobile actually skidded off the main traveled portion of that highway and that the collision occurred west of, and off, Highway 171. Under those findings, we agree with the trial court that Procell, the driver of the truck, was not negligent.
*740 For the reasons herein assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.